IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| GRADY CLARK CUNNINGHAM, JR., | : | CIVIL ACTION |
| Debtor. | : | No. 15-958 |
| | : | |
| | : | |
| SEAN LOUCAS, et al., | : | BANKRUPTCY |
| Appellants, | : | No. 14-15010 |
| | : | |
| v. | : | |
| | : | ADVERSARY |
| GRADY CLARK CUNNINGHAM, JR., | : | No. 14-375 |
| Appellee. | : | |

**MCHUGH, J.**                                                                                                                                                                **NOVEMBER 3, 2015**

<u>**MEMORANDUM**</u>

      This is a bankruptcy appeal by Creditors who contend that the bankruptcy court erred in failing to give effect to a state court judgment. The claim arose out of an altercation between a bar bouncer and a group of patrons. The bar's insurance carrier declined to provide coverage. The case proceeded without the defendants being represented, and a hearing was held at which uncontested testimony from the patrons led to substantial damage awards against the bouncer, Grady Clark Cunningham, Jr., and the bar. This in turn led Cunningham to file for bankruptcy protection.

      Appellants in this case—the bar patrons injured in that altercation, and judgment Creditors—filed an adversary proceeding against Cunningham seeking to have their claims against him excepted from his bankruptcy discharge under 11 U.S.C § 523(a)(6). Inexplicably, they largely ignored the case in the bankruptcy court. After some adverse rulings based on

Creditors' failure to provide discovery, the bankruptcy court found against them and in favor of Debtor Cunningham on cross-motions for summary judgment.

On appeal, the Creditors seek a way around the difficult posture in which they placed themselves, arguing that the bankruptcy court erred in failing to give preclusive effect to the state court's determination that the Debtor's state-of-mind was "willful and malicious" at the time of the altercation, which would lower the shield of bankruptcy protection. Specifically, they argue that the bankruptcy court violated both the Rooker-Feldman doctrine and principles of collateral estoppel.

I reject Appellants' Rooker-Feldman argument as a matter of law, and I am not persuaded that the bankruptcy court's findings of fact are clearly erroneous as they pertain to collateral estoppel. Accordingly, the decision of the bankruptcy court is affirmed.

## I. Factual Background

This matter arises from a civil tort suit filed in the Court of Common Pleas of Lehigh County, Pennsylvania in 2007. That action pitted the Appellants—Sean Loucas, James Schwar, and Kristy Schwar—as plaintiffs against defendants Jellybeans Southside Jam, Inc., Grady Cunningham, and Frank Garfalo. The Complaint in that civil suit alleged nine counts of negligence, and one count of assault and battery against the bar, Jellybeans, alleging vicarious liability for its employees' conduct.[1] The details of the altercation are not relevant to the case in its present posture. It suffices to say that if the allegations are true, Cunningham and his fellow bouncer committed egregious and unjustified acts of battery in the process of forcibly removing Creditors from the bar, causing them serious injuries.

---

[1] The Complaint's heavy emphasis on negligence suggests that plaintiffs' counsel was mindful of likely exclusions for intentional conduct in any potentially available policy of liability insurance.

1

Cunningham did not respond to the Complaint, but as discussed more fully below, maintains that he failed to do so based on assurances from his employer that an insurance carrier would defend him. No defense emerged, and the case proceeded to a hearing.

Judge J. Brian Johnson of the Lehigh County Court of Common Pleas heard testimony. As he noted in his subsequent order, all of the parties received proper notice of that hearing, but none of the defendants appeared. Testimony of the plaintiffs was deemed to be credible, and Judge Johnson issued an order containing only sparse findings and awarding damages. Loucas was awarded a total judgment of $618,800 against Jellybeans and Cunningham: $218,800 in economic damages; $200,000 in non-economic damages; and $200,000 in punitive damages. In a footnote pertaining to the punitive damages, Judge Johnson noted that "[t]he conduct of the Defendants was outrageous." May 9, 2008 Order, Lehigh County Court of Common Pleas, No. 2007-C-2459. James Schwar was awarded a total judgment of $454,289.80 against Jellybeans and Cunningham: $54,289.60 in economic damages; $200,000 in non-economic damages; and $200,000 in punitive damages. Another footnote attached to the punitive damages award denoted that the defendants' conduct was outrageous. Kristy Schwar was also awarded $5,000 in non-economic damages for having "watched the horrific scene of the other Plaintiffs being beaten and [for having] experienced emotional distress as a result." Id. No appeal to this judgment was ever initiated.

After the state court judgment was rendered, Debtor Cunningham filed for bankruptcy protection. Creditors Loucas, James Schwar, and Kristy Schwar initiated this adversary action to except the state court judgment from being discharged in bankruptcy pursuant to 11 U.S.C. § 523(a)(6), which excepts from discharge debts arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." During the pre-trial phase of the

2

adversary proceeding, the Debtor sought discovery through interrogatories, a request for production of documents, and a request for admissions. Creditors did not seek discovery, but instead moved for summary judgment. Debtor responded to the Creditors' motion, stating his intent to file a summary judgment motion of his own after discovery. When discovery was not forthcoming, Debtor sought and received an extension of the discovery deadline. After Creditors finally responded to the discovery requests, the Debtor considered the responses incomplete and filed a Motion to Compel, as well as his own Motion for Summary Judgment.

The court scheduled a pre-trial conference with the parties for January 7, 2015, intending to express that differences in factual allegations meant the matter was not well-suited for summary judgment, but without explanation, Creditors' counsel failed to appear. The court granted Debtor's Motion to Compel.

On February 4, 2015, the court heard argument on the two summary judgment motions. Counsel appeared for both parties, but Creditors' counsel was not counsel of record. He could not provide an explanation for the earlier failure to appear and knew nothing of unanswered discovery requests. The court explained that Debtor's requests for admissions had never been answered, with the result that the facts set forth were deemed admitted as a matter of law. Specifically, Creditors were deemed to have admitted that they had no evidence as to the Debtor's state of mind when they suffered their injuries, rendering it impossible for them to establish that the Debtor acted with the requisite state of mind to except the state court judgment from discharge under 11 U.S.C. § 523(a)(6).

The bankruptcy court then granted summary judgment to the Debtor. In doing so, it rejected Creditors' argument that collateral estoppel should apply to prevent the relitigation of the Debtor's state of mind at the time of the underlying incident. Creditors argue on appeal that

both the Rooker-Feldman doctrine and collateral estoppel require me to reverse and hold that the Debtor had the requisite mental state to except the state court judgment from discharge at bankruptcy.

## II. Discussion

### A. Standard of Review

District courts have appellate jurisdiction over final judgments of bankruptcy courts. Universal Minerals, Inc. v. C. A. Hughes & Co., 669 F.2d 98, 100–01 (3d Cir. 1981) (citing 28 U.S.C. § 1334). The district court "does not sit as a finder of facts." *Id.* at 101–02. Rather, the reviewing court "applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component." In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989); see also Universal Minerals, 669 F.2d at 102–03. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). In this case, the Court must review the bankruptcy court's decision to grant summary judgment to the Debtor. A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The dispute in this case revolves around the question of whether the bankruptcy court was bound by the state court's prior decision with regard to the determination of Debtor's mental state at the time of the altercation at the bar. The state court judgment included $400,000 in punitive damages, and in two footnotes Judge Johnson noted that "[t]he conduct of the

Defendants was outrageous."  Appellants argue that the bankruptcy court was bound by this finding, and that as a result their judgements cannot be discharged.

   *B.  Applicability of the <u>Rooker-Feldman</u> Doctrine to Bankruptcy Proceedings*

   The <u>Rooker-Feldman</u> doctrine prevents federal courts other than the Supreme Court from sitting as appellate courts for state court judgments.  <u>In re Knapper</u>, 407 F.3d 573, 580 (3d Cir. 2005).

> The <u>Rooker–Feldman</u> doctrine arises from 28 U.S.C. § 1257 which states in relevant part that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court." Since Congress has never conferred a similar power of review of the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions.…
>
> [T]he <u>Rooker–Feldman</u> doctrine prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling.  Although § 1257 refers to orders and decrees of the highest state court, the <u>Rooker–Feldman</u> doctrine has been applied to final decisions of lower state courts.
>
> Thus, a claim is barred by <u>Rooker–Feldman</u> under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.  In either case, <u>Rooker–Feldman</u> bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.

<u>Id.</u> at 580 (citing <u>Walker v. Horn</u>, 385 F.3d 321, 329 (3d Cir. 2004) (footnotes omitted).

"[A]lmost any claim that is actually litigated will also meet the inextricably intertwined test." <u>Marran v. Marran</u>, 376 F.3d 143, 149 (3d Cir. 2004).

   In conceptual terms, although there is substantial overlap between the <u>Rooker-Feldman</u> doctrine and collateral estoppel, the former is a rule of jurisdiction and the latter one of preclusion.

5

> The Supreme Court distinguished Rooker–Feldman, which is an issue of jurisdiction, from the separate principles of collateral estoppel and res judicata, which are issues of preclusion. It explained that a federal court is not barred from "exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Rather, "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." . . . Rooker–Feldman clarifies federal jurisdiction in a federalist system where state and federal courts operate simultaneously and side by side. Preclusion principles, on the other hand, promote the finality of judgments, fostering judicial economy, predictability, and freedom from the harassment of multiple lawsuits.

Magoni-Detwiler v. Pennsylvania, 502 F. Supp. 2d 468, 472 (E.D. Pa. 2007) (Robreno, J.) (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005)) aff'd sub nom. Magoni-Detwiler v. Bloomingdale, 293 F. App'x 928 (3d Cir. 2008).[2]

In Saudi Basic, the Supreme Court placed sharp limitations on the Rooker-Feldman doctrine, noting that the doctrine had sometimes been construed by lower courts far beyond the contours of its namesake cases. 544 U.S. at 283. That case confined the scope of Rooker-Feldman to:

> cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker–Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Id. at 284. In other words, the Rooker-Feldman doctrine applies in very narrow circumstances, even though "comity or abstention doctrines may . . . permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." Id. at 292. Federal jurisdiction is not terminated simply because a state court has rendered an entry of judgment,

---

[2] This topic has been the subject of much scholarly debate, and there are questions about whether the Rooker-Feldman doctrine need even exist at all. See Adam McLain, The Rooker-Feldman Doctrine: Toward a Workable Role, 149 U. PA. L. REV. 1555, 1570–72 (2001); Allison B. Jones, The Rooker-Feldman Doctrine: What Does it Mean to Be Inextricably Intertwined?, 56 DUKE L.J. 643, 654–56 (2006).

though the federal court may be bound by the preclusive effects of that doctrine. Id. The Third Circuit has further reinforced this notion, stating that "a district court is not divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in a state court." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006); see also Saudi Basic, 544 U.S. at 293.

> If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

Saudi Basic, 544 U.S. at 293 (quoting GASH Assocs. v. Vill. of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).

Furthermore, the Rooker-Feldman doctrine applies differently to bankruptcy courts because "[b]ankruptcy courts have extensive powers to modify or discharge state-court judgments." 18B Charles A. Wright, et al., Federal Practice and Procedure § 4469.1 (2d ed.).

> Application of the Rooker–Feldman doctrine in bankruptcy is limited by the separate jurisdictional statutes that govern federal bankruptcy law. The Rooker–Feldman doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case. In the exercise of federal bankruptcy power, bankruptcy courts may avoid state judgments in core bankruptcy proceedings, see, e.g., 11 U.S.C. §§ 544, 547, 548, 549, may modify judgments, see, e.g., 11 U.S.C. §§ 1129, 1325, and, of primary importance in this context, may discharge them, see, e.g., 11 U.S.C. §§ 727, 1141, 1328.

In re Sasson, 424 F.3d 864, 871 (9th Cir. 2005) (citing In re Gruntz, 202 F.3d 1074 (9th Cir. 2000)) (citations omitted). The Third Circuit has also adopted this viewpoint, quoting Gruntz as follows:

> In apparent contradiction to Rooker–Feldman theory, bankruptcy courts are empowered to avoid state judgments, see, e.g., 11 U.S.C. §§ 544, 547, 548, 549; to modify them, see, e.g., 11 U.S.C. §§ 1129, 1325; and to discharge them, see, e.g., 11 U.S.C. §§ 727, 1141, 1328. By statute, a post-petition state judgment is not binding on the bankruptcy court to establish the amount of a debt for

7

> bankruptcy purposes. Thus, final judgments in state courts are not necessarily preclusive in United States bankruptcy courts. Indeed, the rule has long stood that a state court judgment entered in a case that falls within the federal court's exclusive jurisdiction is subject to collateral attack in the federal courts.

In re Knapper, 407 F.3d at 583 n.22 (quoting Gruntz, 202 F.3d at 1079); see also In re Funches, 381 B.R. 471, 484-85 (Bankr. E.D. Pa. 2008).

Given this precedent, federal jurisdiction is not impeded by the Rooker-Feldman doctrine. The Debtor sought bankruptcy protection in federal court, a claim independent of the state court action, even if part of the debt from which the Debtor seeks relief is the direct result of the state court judgment. The Debtor's bankruptcy claims cannot be said to have been caused by the state court judgment even if most of his debt stems from the judgment. Debtor sought bankruptcy protection for his debts in general, not just the portion specific to the judgment.

The Ninth Circuit's language from In re Sasson is directly applicable here where the Debtor is:

> not seeking to have the bankruptcy court review the merits of the state court judgment; rather, he is attempting to prevent the bankruptcy court from giving effect to the state court judgment. Likewise, the creditor is not seeking modification of the state court judgment; it is attempting to save the judgment from bankruptcy discharge. In entering judgment, the bankruptcy court was exercising its exclusive statutory power to determine whether a debt is dischargeable in a bankruptcy case. See 11 U.S.C. §§ 523(a)(6), 727(a)(2). Actions seeking a determination of nondischargeability are core bankruptcy proceedings, see 28 U.S.C. § 157(b)(2)(I), and are not subject to the Rooker–Feldman doctrine. The Rooker–Feldman doctrine did not deprive the bankruptcy court of jurisdiction to enter the money judgment in this case.

In re Sasson, 424 F.3d at 871 (citations omitted); see also Funches, 381 B.R. at 484–85. While Appellants assert that only one issue, the Debtor's mental state, is subject to Rooker-Feldman, not the entire state court judgment, it does not follow that the bankruptcy court's subject matter jurisdiction over the question of the dischargeability of the judgment is terminated.

8

The determination of the mental state of the Debtor at the time of the altercation underlying the state court judgment may still be subject to preclusive doctrines such as collateral estoppel, which was considered by the bankruptcy court, but Rooker-Feldman did not deprive the bankruptcy court of jurisdiction.

*C. Collateral Estoppel*

Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." San Remo Hotel, L.P. v. City & Cnty. of San Francisco, 545 U.S. 323, 336 n.16 (2005). Where the prior ruling was made by a state court on the basis of state law, the preclusive effect of that ruling is governed by the law of that forum. Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 145 (3d Cir. 1999). Nevertheless, the trial court has broad discretion in determining whether collateral estoppel should apply. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 331 (1979). The following elements are required for collateral estoppel to apply in Pennsylvania:

1) the issue decided in the prior adjudication was identical with the one presented in the later action,
2) there was a final judgment on the merits,
3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and
4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Safeguard Mut. Ins. Co. v. Williams, 345 A.2d 664, 668 (Pa. 1975). Put another way, "it must appear that the fact or facts at issue in both instances were identical; that these facts were essential to the first judgment and were actually litigated in the first cause [of action]." Schubach v. Silver, 336 A.2d 328, 334 (Pa. 1975).

9

The bankruptcy court below began with an analysis of the elements of collateral estoppel. It acknowledged that the first three elements had been established, but focused on the final element: whether the party who is to be estopped had a full and fair opportunity to actually litigate the issue in question prior to the action. Opinion Sur Order of February 4, 2015 at 9. In doing so, the court determined that "the state court hearing clearly lacked the hallmarks of an adversarial dispute sufficient to allow the inference that the pivotal question was 'actually' litigated," as required for collateral estoppel to apply. Opinion Sur Order of February 4, 2015 at 10. As discussed above, this court "must accept the trial court's findings of historical or narrative facts unless they are clearly erroneous, but we must exercise a plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." Universal Minerals, 669 F.2d at 102–03.

The bankruptcy court based its analysis of this element on several factors, including: a finding that the Debtor's failure to appear at the state court trial or answer the Complaint was not motivated by bad faith; the fact that the findings essential to the state court judgment were based only on the Plaintiff's presentation of evidence, with testimony un-tested by cross-examination; a finding that the Debtor did not appear or answer because his former employer assured him that insurance would cover the claims; a finding that the Debtor did not possess the legal sophistication to know whether the employer's representation should have been relied on; and the fact that the Debtor immediately retained legal counsel when it became apparent to him that his employer's representation was not true. Opinion Sur Order of February 4, 2015 at 9–10. In sum, the bankruptcy court concluded that although there was a hearing in state court, the resulting judgment constituted a default "for all practical purposes." Opinion Sur Order of February 4, 2015 at 10. In reviewing these findings of fact by the bankruptcy judge, I find that

none are clearly erroneous.  The trial judge was able to hear arguments from the parties at the hearing on the motions, and nothing in the record indicates that the bankruptcy court made a mistake in assessing the parties' credibility or in evaluating the events underlying his findings.

Based on these findings of fact, the bankruptcy court found that the matter was not "actually litigated" as required for collateral estoppel to apply.  I note that under Pennsylvania state law on collateral estoppel, when a defendant is properly served but judgment by default is entered against him because of his failure to appear, "in a subsequent suit based upon a different cause of action, the judgment is not conclusive as to the truth of the allegations in the plaintiff's complaint.' " Martin v. Poole, 336 A.2d 363, 367 (Pa. Super. Ct. 1975) (quotation omitted).  Put more plainly, "[a] default judgment lacks the requisite element that it be 'actually litigated.' " McGill v. Southwark Realty Co., 828 A.2d 430, 435 (Pa. Commw. Ct. 2003); see also 18A Charles A. Wright, et al., Federal Practice and Procedure § 4442 (2d ed.) (noting that, under federal law, "a one-sided hearing after default for failure to answer" provides a procedure that "is apt to be too remote from full adversary contest to support issue preclusion.").

Given the bankruptcy court's undisturbed findings of fact, I find that it correctly concluded that the set of facts before it constituted a situation in which the Debtor did not have a "full and fair opportunity" to "actually litigate" the matter for purposes of collateral estoppel. Although the state court judgment followed a hearing in which the plaintiffs in that case presented testimony, such testimony was not tested by the crucible of cross-examination.  While a defendant's subjective belief that he need not respond to a claim will not protect him from being subject to the entry of a state court judgment against him in his absence, the Debtor's complete failure to participate in the state court proceeding was a proper consideration in the bankruptcy court's determination of this particular issue.

I also note that even if the Creditors' claims were "actually litigated" in the state court action, another requirement for the application of collateral estoppel is that "the issue decided in the prior adjudication [be] identical with the one presented in the later action." Safeguard Mut., 345 A.2d at 668.  In this case, the state court's finding of "outrageous" conduct is not necessarily identical to the issue of whether Debtor's actions were "willful and malicious" as defined by 11 U.S.C. § 523(a)(6).

The Supreme Court has held that Section 523(a)(6) must be applied very precisely.  In Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998), it considered the difference between acts committed intentionally that cause injury with acts performed with an actual intent to cause injury:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."  Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury."  Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts.  Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

Id. at 61–62 (citing Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).  Further, the Court noted that allowing judgments based on injuries arising from reckless conduct such as intoxicated driving to qualify for discharge as "willful and malicious" under § 523(a)(6) would "obviate the need for § 523(a)(9), which specifically exempts debts 'for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance,' " and also § 523(a)(12) which exempts "debts for 'malicious or reckless failure' to fulfill certain commitments owed to a federal depository institutions regulatory agency." Id. at 62.  Finally, the Court held "that debts

12

arising from recklessly or negligently inflicted injuries do not fall within the compass of §523(a)(6)." Id. at 64.

In light of Kawaauhau, it is not a foregone conclusion that giving preclusive effect to Judge Johnson's finding of "outrageous" conduct would necessarily prevent discharge of the judgments. In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984)). A finding of "outrageous" conduct could therefore encompass either an "evil motive" or reckless mental state, and it is clear that reckless conduct would not be dischargeable under 11 U.S.C. § 523(a)(6). See Kawaauhau, 523 U.S. at 64. On the record as it stands, I could not conclude with confidence that the specific issue of whether the conduct was "willful and malicious" within the meaning of 11 U.S.C. § 523(a)(6) was decided by the state court, as I read Kawaauhau as requiring such precision.

Though the parties do not raise the issue, I also find no error in the bankruptcy court's treatment of the Debtor's requests for admissions, and the ramifications of those admissions in granting Debtor's Motion for Summary Judgment. While I do not take great pleasure in the outcome here, I note, as the bankruptcy court did, that Creditors' "almost total disregard for the rules of procedure . . . [did] little to help their cause." Opinion Sur Order of February 4, 2015 at 16 n.4. Indeed, Creditors and their counsel dug their own hole in failing to respond to the Debtor's Requests for Admission, offering no explanation for the lack of response, seeking no relief from the time limit for response, failing to appear at the January 7, 2015 hearing, serving a late reply without permission on January 14, 2015, and, finally, appearing at the summary

judgment hearing with "an extremely limited familiarity with the history of the case"—all of which the bankruptcy court described as "unabashedly cavalier misconduct." Id.

## IV. Conclusion

I affirm the bankruptcy court's decision to grant summary judgment to the Debtor and to deny the motion for summary judgment filed by Appellants. An appropriate order follows.

                                                /s/ Gerald Austin McHugh
                                           United States District Court Judge